Turlef, J.
delivered the opinion of the court.
This is an action of debt brought by the defendant in error to recover compensation for services rendered the plaintiff’s intestate in his life time, as a general superinlendant of his property and business. The declaration contains the indebitatus count for work aud labor done, and a count upon a quantum meruit for the same services. The pleas are nil debit, and the statute of limitations. The jury found a verdict for the defendant in error, upon which the court gave judgment, and to reverse which, this writ of error is prosecuted.
The proof shows abundantly, that Wm. P. French, the plaintiff in the circuit court, was assiduously engaged in attention to the business of Thomas Hopkins, the intestate, almost continually from the year 1821, to the year 1836, but without any special contract as to the amount or nature of the compensation to be given therefor, and out of this, the first cause of error is assigned, viz. that the action of debt is not the proper remedy, because 1st. the damages being unliquidated and uncertain, the proper remedy is assumpsit and not debt, and 2d. the action is not maintainable against an administrator upon the simple contract of his intestate by the principles of the common law.
That the actions of debt and indebitatus assumpsit are concurrent remedies in cases of simple contracts for the payment of money, either express or implied, has-been so repeatedly held, that it is deemed unnecessary to enter into an examina *454 tion of tbe authorities in support of the proposition, and we satisfied with a reference to tne case of Hickman vs. Searcy's Ex., 9 Yer. Rep. 47, where this point is expressly so adjudicated by this court.
That indebitatus assumpsit is a proper remedy to recover compensation for work and labor done, cannot be denied — indeed, (if the action of debt be not proper,) it is the only remedy, where the amount of compensation has not been ascertained by express agreement, for no special count in as-sumpsit can be framed upon a promise arising by implication of law. The special counts in assumpsit are given to recover damagesTor the non-performance of contracts specially entered into, and whether the consideration be executed or executo-ry, makes no difference. The common counts are founded on express or implied promises to pay money in consideration of a precedent and existing debt, and in general, the consideration must have been executed, not executory, and the plaintiff must have been entitled to payment in money. 1 Chitty’s Pl. 373. So that the indebitatus count in assumpsit is no more the proper remedy to recover unliquidated damages arising from the non-performance of a special contract, than would be the action of debt. But it is said that the action of debt will only lie for a sum which is certain, or is capable of being readily reduced to a certainty. This as a general principle is true, but extended to the length to which it is sought to be carried, would be entirely subversive of the action of debt as a remedy upon simple contracts, where the amount to be paid has not been ascertained by express agreement, or would make the right to use it depend not upon legal principles, but upon the nature and character of the proof to be adduced upon the trial, and the ease or difficulty which the value of services performed or the goods delivered, could be ascertained thereby. It is not denied that the action will lie for goods, wares and merchandise sold and delivered, and for work and labor done, although there be no express agreement as to the amount to be paid. This court cannot therefore say that the test is the difficulty of ascertaining the value of the goods sold and delivered, and the work and labor done, because *455 they may be of a kind and character about which men may well differ in opinion.
It is not to be denied, that there is some confusion produced in the books relative to the use of this action, by the employment of such terms as “eo nomine,” “in numero,” and “unliquidated damages.” But it is well settled, that although a specific sum must be demanded in the declaration, a less may be recovered, and that although in all cases of goods, wares and merchandise, sold and delivered, and of work and labor done, where the law implies the promise, because the consideration is executed, the damages arc of necessity unli-quidated, yet the action is maintainable. But this confusion is produced either by a loose use of the phi ases, or by giving them an improper construction. By uco nomin",” and “iw numero,” is only meant, that a specific sum is sought to be recovered which is improperly detained, and that the action does not sound in damages as does the action of assumpsit, thus drawing the proper line of demarcation between them, as applicable to contracts of the character under consideration. By the words, “unliquidated damages,” is manifestly meant (if there be any meaning in what is most unquestionably a very loose use of words,) such damages as are sustained by the non-performance of an executory contract, which cannot .ha* considered as a money demand, and the amount of which may depend upon such a variety of considerations and circumstances, as to render it exceedingly difficult to be ascertained. To illustrate it by an example, suppose a contract for the building-of a house, which is not performed, or performed in a man-r. net different from the contract, the damages sustained are “unliquidated,” and such as are not.readily reduced to a certainty, and for which neither indebitatus assumpsit nor deht will lie.
The principle then established by us is this, “that in all cases where the consideration iias been executed and where there is an express or implied promise to pay in money the value thereof, indebitatus assumpsit or debt is the proper remedy. But that in all those cases, where the consideration is not executed, or if it be, and the promise to be performed in consideration thereof, is not to pay money, but to do some other *456 thing, that neither indebitatus assumpsit or debt will lie, and . , , . .... that the remedy is by a special action on the case.
By the common law, that an action of debt on a simple contract, could not be maintained against executors or administrators is true, for the reason that they could not wage their law as their intestate or testator might if living. But whether this principle is applicable here, may be more than questioned, inasmuch as the wager of law has never been allowed by our courts of justice, in any case whatever. Vide Childress vs. Emory, 8 Wheat. Rep. 642. But if this were otherwise, an administrator or executor can only take .advantage of such a mistake by demurrer, and cannot object to it after pleading to the merits of the case. 1 Chitty’s Pl. 128.
The second cause of error assigned, arises out of the operation of the statute of limitations, which it is contended barred a recovery of compensation for any services rendered more than six years before the commencement of the action. It is admitted the law upon this point was correctly expounded by the court below, and therefore the only question for our consideration, arises out of the proof adduced, in order to take the case without the operation of the statute.
From the time of the passage of the statute of James I, •down to the present, the decisions of the different courts in England and the United States, upon the operation' of the statutes of limitation as to personal actions, have been of so conflicting a character, that any attempt to examine them with the view to extract a principle from them would be tedious and hopeless. We shall therefore rest contented with abiding by the decision of this court upon the point involved in controversy, made in the case of Belotte's Ex. vs. Wynn and others, 7 Yer. Rep. 534. The court there say, “that to revive a debt barred by the'statute of limitations there must be an express promise to pay or an admission of an existing debt still due, which the debtor is willing to pay.” If upon this principle there be not proof in the case under consideration, of such a character as will prevent the statute of limitations from operating as a bar to any part of the plaintiff’s demand, the judgment is erroneous and ought to be reversed. What will he sufficient to revive a debt barred by the statute oflim- *457 Stations is a mixed question of law and fact, in other words, the jury must find the facts and the court must declare the result, therefore it is the legitimate province of the court to examine the proof adduced, in order to see whether the finding of the jury be correct, and it is not bound by the virdict to the same extent as when the question is of unmixed fact, and when the conclusions are to be drawn by the jury.
The question.then presented to this court is, not the usual one of whether there was any proof from which the jury might have inferred the facts submitted to their consideration, but whether if the proof adduced be true, it be of such a character as will warrant the court in saying, that there is such a promise to pay, or such an admission of the existence of the debt, barred as will revive it, and take it without the operation of the statute of limitations.
There is much proof in this case from the letters of the intestate, and other sources, showing the nature of the services rendered by the plaintiff-, and the repeated assurances that he should be well remunerated therefor. But it is the testimony of John Petty which is mainly relied upon for preventing the operation of the statute of limitations. He says, that he had heard Mr. Hopkins, the intestate, frequently speak of Mr. French, the plaintiff, and the services he had rendered him, and declare a determination to remunerate him; the last time was in 1835, when he said that he had as yet made him but little remuneration, but that he would compensate him tenfold. This we think is not only an admission of the existence of his liability to French, but both a willingness and direct promise to pay it. To say that the admission and promise must be for a specific sum in numero, would be to go further on the subject of the statute of limitations than our courts have yet gone, and further 'than we can see any necessity for going. We think the statutes of limitations were designed to prevent persons .from being harassed by, and being made liable for stale demands; and unless we could say, as has been done by statute in England, that no debt barred by the statute of limitations shall be revived unless it be done in writing, we do not see how greater security can be given than is by the principle, which requires either a dire.ct admission of the existence *458 of an unsatisfied liability, or a direct promise to pay it, both of which amount to the same thing in substance, the only difference being, that in the one instance there is a promise to pay, which of itself recognises the existence of the demand, and in the other there is an implied promise to pay, arising out of the admission of the existence of the demand.
The third cause of error assigned is, that the amount of damages demanded in the declaration for the detention of the debt is not sufficiently large to cover the amount assessed by the jury. That this is not error, has been determined by the supreme court of this State in the case of Stewart vs. Davidson, Peck’s Rep. 203.
Upon a point of practice, we would not unsettle an adjudicated case of our own court, even though we might think if it were a new question, we would have settled it otherwise, but we do not so think, and the case is supported by that of the Executors of Vanransalier vs. Executors of Platner, 2 John. Ca. 18.
The fourth cause of error assigned is, that the debt de-ipnanded is stated in the declaration to have been due on 1st. January, 1836, and that interest should only have been allowed on the demand from that time.
This proposition we do not assent to.
Time is important in the description of written contracts, and if misstated, it is a fatal variance; but it is not so as to a verbal or implied contract. The allegation of the debts being due at one period, is sufficiently supported by proof of its being due at a time anterior, and we therefore think that the jury were warranted by law in calculating interest on the different items of the debt, from the periods at which they sep-erately fell due.
The fifth cause of error assigned is, that an answer of the plaintiff to a bill of discovery, filed in the case by the defendant was permitted to be read, although objected to by the defendant. It is true, as we think, that the answer was not legal evidence, and if nothing else had transpired but the reading of it after it was objected to, it would have been error; but it appears from the bill of exceptions, that when the record of the bill and answer were offered in evidence, the *459 defendant observed that you may read the bill, which the J J plaintiff did, but wasstopped, when in continuation he proposed to read the answer.
That the plaintiff thought that the consent extended to both bill and answer, seems obvious to us, for why should he wish to read the bill which contained serious charges against him, unless he could also read the answer, which explained them. The circuit court must also have thought so, and having a much better opportunity of knowing whether there had been an attempt to entrap thán we have, we will not undo what it has done, and the more especially as we do not see that the reading of the bill and answer could have produced much change in the result.
The sixth and last cause of error assigned is, that the debt 'and damages are excessive. This was a question peculiarly within the province of the jury, and the court would not reverse for a mistake as to the amount, unless it were gross and palpable, which we think is not the case. The services rendered were of a laborious and important character, and continued for a series of some sixteen years, and without other remuneration than such as may be obtained by this judgment.
Upon the whole, we think there is no error in the rendition of the judgment in the court below, and direct its affirmance.
Judgment affirmed.